**Dennis MOORE, Individually and on behalf of all other persons similarly situated**

v.

**Eugene FOWINKLE, Commissioner, Tennessee Department of Public Health, et al.**

**Civ. No. 3–74–78.**

United States District Court, E. D. Tennessee, N. D.

June 14, 1974.

Jerrold L. Becker, Knoxville, Tenn., for plaintiff.

C. Hayes Cooney, Nashville, Tenn., Charles A. Maner, Jr., County Law Director, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

■ This action was initiated on March 27, 1973 by a complaint requesting a three-judge court to temporarily and permanently enjoin the State's further enforcement of 53 Tenn.Code Ann. § 5501 et seq. and declare the same unconstitutional for the reasons set forth below. Plaintiff has since amended his complaint to delete his request for either temporary or permanent injunctive relief; accordingly, a three-judge court is no longer required. Seergy v. Kings County Republican County Committee, 459 F.2d 308 (2nd Cir. 1970); see also Mitchell v. Donovan, 398 U.S. 427, 90 S. Ct. 1763, 26 L.Ed.2d 378 (1970).

Jurisdiction of the Court lies under 42 U.S.C. § 1983; 28 U.S.C. § 1343.

Remaining before the Court, however, is plaintiff's request for declaratory relief under 28 U.S.C. §§ 2201, 2202.

On October 1, 1973, plaintiff entered into a one-year rental agreement with his landlord, Ray DePue, in which he agreed to pay $95.00 a month for the rental of certain premises. Thereafter, in the belief that his premises were not in compliance with the minimum health standards for the rental of premises, 53 Tenn.Code Ann. § 5502, and owing his landlord no back rent, on February 19, 1974, plaintiff by telephone advised Mr. Elmer Dykes, the Building Inspector for Knox County, that he wished to invoke the statutory remedies set forth in 53 Tenn.Code Ann. § 5501 et seq. Defendant Dykes stated that no statutory inspection could commence until plaintiff deposited with the County Court Clerk the necessary deposit. Plaintiff claims that his poverty effectively precluded him from depositing this amount, thus denying him the statute's benefits.

There appearing to be no controversy of fact, the case is presently before the Court on plaintiff's motion for summary judgment. F.R.Civ.P. 56. Oral argument was heard in support of and in opposition to the motion.

### Mechanics of the Statute

The Act [1] requires the State Department of Public Health to promulgate

---

1. "53–5501. *Definitions.*—As used in this chapter unless the context otherwise requires:

\* \* \*

"(b) 'Tenant' means one who occupies as a residence the premises of another in subordination to that other person's title and with

his assent express or implied and whose rental payments do not exceed fifty dollars ($50.00) per week or the monetary equivalent thereof for any period of payment other than weekly."

"53–5503. *Complaint by tenant—Prerequisites—Contents.*—Any tenant may file a complaint with the building inspector of the city or county in w ich the rented premises is located or with the county public health department in which said tenant's rented premises is located where. the premises are, in the opinion of the tenant who occupies same, in violation of said minimum health standards and consequently unfit for human habitation. The complaint shall be in writing, and a copy shall be forwarded by certified mail to the tenant's landlord, who is the owner of the premises. As a condition precedent to the filing of a complaint as herein provided, the tenant shall have paid all rental sums due and owing and shall have deposited with the county court clerk of the county in which the complaint is to be filed a sum equal to one (1) month's rental which sum shall be: (1) returned to the tenant upon final determination that the rented premises fails to meet the said standards or (2) forfeited by the tenant to the state for the use of the county agency to whom the complaint was directed upon a final determination that the rented premises meets the said standards.

"53–5504. *Inspection—Notice of unfitness —Repairs—Deposit of rent—Certificate of noncompliance—Forfeiture of rent.*—The building inspector or the county public health department to whom the complaint is directed shall, within fourteen (14) days of the filing of a complaint, make an inspection of the rented premises. If it is found that said unit is unfit for human habitation, as defined, the building inspector or county public l.ealth department shall notify the landlord of the premises of the violation found, in writing, by certified mail, and a copy shall be forwarded to the tenant. The notice, in addition to setting out the condition found, shall give the landlord of the premises thirty (30) days in which to correct the condition. If at the expiration of the thirty (30) day period, as determined by an inspection of the premises by the building inspector or by the county public health department, w'.ich inspection shall be made within seven (7) days of the expiration of said period, the landlord of the premises has not corrected the condition, the tenant shall pay to the county court clerk of the county wherein the premises is located the rental payments which may become due from that date. If the landlord of the premises has not corrected the condition at the expiration

of six (6) mont s from the date of the first notice, as determined by an inspection of the premises by the building inspector or county public health department, which inspection shall be made within seven (7) days of the expiration of said period, the rental payments so made by the tenant to the county court clerk shall, upon a certificate of noncompliance being filed with the county court clerk by the building inspector or the county public health department, which certificate shall be filed within fourteen (14) days of the expiration of said period, a copy of which shall be forwarded by certified mail to the landlord, be forfeited by the landlord of the premises to the state for the use of the agency to whom the complaint was directed and the county court clerk shall, at the expiration of a thirty (30) day period from the date the certificate of noncompliance is filed where no appeal has been led by the landlord as provided l erein, pay to the state for the use of the county agency to whom the complaint was directed, less all fees as hereinafter provided, the rental payments so held. . . . If the landlord of the premises shall have corrected the condition, as determined by an inspection of the premises by the building inspector or the county public health department, the county court clerk shall, upon receiving a certificate of compliance from the building inspector or the county public ealth department, which certificate shall be filed within fourteen (14) days of the expiration of said period, return the rental payments so held to the landlord of the premises.

"53–5505. *Dispossession of tenant—Vacating during repairs—Premises not repairable.* —No tenant shall be dispossessed of the rented premises or otherwise penalized by the landlord of the premises for prosecuting any complaint under or pursuant to this chapter, or for payment to the county court clerk of rental payments where the rented premises is in violation of the standard, as defined herein. . . . . In the event the conditions are suc i that to repair the building is not feasible, the landlord shall notify the tenant and the agency to which the complaint was directed that he has elected not to repair the structure and shall give the tenant thirty (30) days' notice to vacate the premises. Thereafter the premises shall not be rented or used as a l uman habitation unless and until said condition of violation is corrected.

"53–5506. *Duties of county clerk—Fees.* —. . . The county court clerk, for his services, shall receive the sum of five per cent (5%) from all such rental payment sums, not including said deposit, which are forfeited to the state for the use of the county agency to whom the complaint was directed.

minimum health standards for rental premises and to forward the same to each county and public health department.

The tenant (any individual who pays $50.00 and under a week for rent) may file a complaint with the building inspector when he believes his premises are in violation of the minimum standards. However, before the tenant can file such a complaint two prerequisites must be satisfied:

1. He must have paid all rent owing to date.

2. The tenant must have filed with the Clerk of the Court a deposit in the amount of one month's rental.

This deposit is returned to the tenant upon a "final determination" that the premises fails to meet the minimal standards, but is "forfeited by the tenant to the state for the use of the county agency to whom the complaint was directed upon a final determination that the rented premises meets the said standards."

Upon the filing of the complaint and the posting of the necessary bond, an elaborate time scheme is invoked.

Within fourteen days of the filing of the complaint, the building inspector must inspect the premises. If the premises are found to be in noncompliance, the owner is notified and given 30 days to correct the condition. A second inspection follows within seven days following the expiration of the initial 30-day period. If at this time the landlord has not made the necessary repairs, the tenant pays to the county court clerk, all rental payments thereafter owing. A third inspection follows within seven days of the expiration of a six-month period. If the premises are still in noncompliance, a certificate of noncompli-

ance is filed with the county court clerk and the six month's rental payments are forfeited by the landlord to the agency to whom the complaint was initially directed. The "county court clerk, for his services, shall receive the sum of five percent (5%) from all such rental payment sums, not including said deposit, which are forfeited to the state for the use of the county agency to whom the complaint was directed."

Plaintiff contends that the statute is subject to the following constitutional infirmities:

1. That the Act's bond requirement discriminates against the poor tenant in violation of the equal protection clause since, as plaintiff argues, the State has offered no rational basis for this provision. In support of this proposition plaintiff cites the Supreme Court's decision of Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972).

2. Secondly, plaintiff contends that 53 Tenn.Code Ann. § 5501 et seq. is violative of his First Amendment rights since the bond requirement denies him his right to petition the government for redress of grievances. In this vein, plaintiff contends that the state has created the only effective remedy and is seeking to deny its use through the allegedly unconstitutional condition. In light of the basis for the Court's holding, it is not necessary to address this second argument.

Defendant, like plaintiff, has couched its defense in the posture of the *Lindsey* case. Thus, both sides submit that that case controls in this instance. The defendants argue that (1) the Supreme Court in *Lindsey* held that there was no "constitutional guarantee of access to dwellings of a particular quality . . . ." 405 U.S. at 74, 92 S.Ct. at

---

"53–5507. * * *

"If any provision of this act or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable.

"This Act shall take effect upon becoming a law, the public welfare requiring it."

874, and (2) that there exists a rational basis for the deposit requirement here, unlike the double appeal bond in *Lindsey*.

The Court has carefully examined the Act under examination and the applicable principles of law and concludes that for the reasons set forth below 53 Tenn. Code Ann. §§ 5501–5507 is unconstitutional in its entirety.

■ In analyzing this Act, the Court is mindful of the principle set forth in *Lindsey* that the state may validly regulate the landlord-tenant relationship "by enacting special provisions applicable only to possessory disputes between [them]." 405 U.S. at 72, 92 S.Ct. at 873. However, while the Court recognized that the historically unique possessory relationship existing between the landlord and tenant permitted special regulation, it further concluded that a double appeal bond bore no rational relationship to any valid state objective. 405 U.S. at 74, 92 S.Ct. 862. Thus, the State in exercising its inherent police power to regulate the landlord-tenant relationship must demonstrate that such regulations reasonably relate to its objectives.

### The Act's Scope

■ Initially, the Court observes that the Act does not apply to all tenants, both rich and poor, but instead is restricted to those persons who pay fifty dollars a week and under for rent. 53 Tenn.Code Ann. § 5501(b). Thus, the Act and its benefits are restricted to a class of tenants whose boundaries are determined by the amount of rent they pay. Assumably, the individual who pays over fifty dollars a week for his rent is left with his previous common law remedies. While it may be argued that the middle and lower rent tenant is more likely to be in need of the statutory inspection procedure, this reasoning alone cannot justify denying the Act's benefits to all tenants on an equal basis. It is clearly within the State's jurisdiction to provide the tenant with an ex-pedient statutory remedy, but here the State has offered no reason for restricting this remedy to an exclusive class based upon rental payments. To permit certain tenants to invoke the benefits and protection of this statute and to deny the same to others, in the absence of any reasonable basis, offends the equal protection clause of the Fourteenth Amendment. This Court must conclude that the classification here is wholly irrelevant to the achievement of the legislation's objective of regulating the landlord-tenant relationship. *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

### Rental Deposit

More troublesome and disconcerting to the Court is the Act's provision at 53 Tenn.Code Ann. § 5503 that requires the tenant to post a deposit in the amount of one month's rent with the inspecting agency before he can invoke the inspection procedure. As noted above, in response to plaintiff's charge that the deposit provision is defective under *Lindsey*, defendant asserts that the nonrecognition of a constitutional right to adequate housing in *Lindsey* permits the State to regulate the landlord-tenant relationship in this particular manner. Defendant further contends that the deposit under examination here is distinguishable from the bond requirement before the Court in *Lindsey* because this deposit reasonably relates to the State's objective.

■ The fact that the Supreme Court found no constitutional guarantee to adequate housing is not dispositive of this case. Indeed, it was not dispositive of the bond issue before the Court in *Lindsey*. While the tenant may not enjoy a constitutionally protected right to have his premises maintained in accordance with minimal health and building standards, once the State recognizes such a right, it cannot be denied on grounds unrelated to the legislature's purpose:

"It cannot be denied that the double-bond requirement heavily burdens

the statutory right of an FED defendant to appeal. While a State may properly take steps to insure that an appellant post adequate security before an appeal to preserve the property at issue, to guard a damage award already made, or to insure a landlord against loss of rent if the tenant remains in possession, the double-bond requirement here does not effectuate these purposes since it is unrelated to actual rent accrued or to specific damage sustained by the landlord. . . ."

405 U.S. at 77, 92 S.Ct. at 876.

■ Like the bond before the Court in *Lindsey*, the Court has not been apprised by the State of any similar situation where an individual must post a deposit with a public agency before invoking its inspection procedure. Of course, if the special possessory relationship surrounding the landlord-tenant relationship warrants the deposit provision of Section 5503, then it must stand as being reasonably related to the State's purpose. In this regard, the State contends that:

". . . [W]hen T.C.A. Secs. 53–5503 and 53–5504 are read together, it is clear that the deposit of a month's rental payment is in reality and effect a one-month's rent in advance to cover the one month (30 days) that the landlord is initially given to correct the tenant's housing should that housing be found unfit for human habitation. . . . Neither statute [§§ 5503 or 5504] requires that the tenant pay both a deposit and a month's rental for the month involved in the initial one-month period which the landlord is given under T.C.A. Sec. 53–5504 to correct the unfit conditions upon notice. . . ." (Defendant's brief at 2 and 3).

The question of reasonableness, therefore, as advanced by both parties, depends upon whether the deposit provision in Section 5503 forces the tenant to pay a month's rent that he would not have to otherwise pay, as argued by

plaintiff, or whether he is merely required to post a rental payment that he would have to pay to the landlord if he did not pay the inspecting agency? That is to say, does the tenant have to pay a single month's rent as usual or must he pay a double rent—one to his landlord and one to the Clerk of the Court?

In inquiring into two possible constructions of this statute, the Court is mindful of the traditional principle of statutory construction that where a single statute is subject to two conflicting interpretations, one which would render the statute invalid and the other which would make it valid, the Court should choose that interpretation that would recognize the statute's validity. United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). The Court, however, can invoke this principle only where the statute is in fact subject to two constructions. This is not the case here. The State's contention that the required deposit is in effect an advance rental payment to cover the 30-day repair period fails in the face of Section 5503's forfeiture provision. Under any construction, the section places an unreasonable onerous burden on either the landlord or the tenant. If, at the end of the first inspection, it is determined that the landlord's premises are in compliance with the standards, then the tenant forfeits his deposit. If the tenant were required to pay only one month's rent then he would not have to pay his landlord any rental for that month despite the fact that the landlord's premises were in compliance with the applicable standards. Alternatively, the tenant would be forced to pay the landlord a month's rent, thus paying two months' rent within a one-month period. Under the latter reading the lower rent tenant, who is most likely to invoke the inspection process, is severely penalized for his use of the statute's remedies.

The State's only explanation at oral argument for the forfeiture provision was to prevent frivolous complaints and to pay the inspectors for the inspection

process. This precise justification was rejected by the *Lindsey* court:

> "The claim that the double-bond requirement operates to screen out frivolous appeals is unpersuasive, for it not only bars nonfrivolous appeals by those who are unable to post the bond but also allows meritless appeals by others who can afford the bond."

405 U.S. at 78, 92 S.Ct. at 876.

The deposit requirement and the State's argument also have questionable validity when examined in an alternative light. If on June 1 a tenant pays $100.-00 to his landlord and decides to invoke the inspection procedure on June 15, he must pay an additional $100.00 to the Clerk of the Court despite the fact that he has previously paid his landlord for rental of the premises through the end of the month. His $100.00 may ultimately be returned to him but the fact remains he must pay two rents within one month under any situation. Even if the tenant invokes the statutory procedure on June 1 he must pay $100.00 to the landlord (a rental sum due and owing, § 5503) and $100.00 to the Clerk of the Court. In any event, whether the tenant's deposit is forfeited or not, he must make two rental payments within the same month. In the absence of a reasonable basis for the deposit provision this Court concludes that the same is in violation of the equal protection clause of the Fourteenth Amendment. It appears incongruous at the very least that the statutory scheme places its heaviest burden on those it principally seeks to aid—those at the lower and middle rent levels. It would be clearly appropriate to require the tenant to continue to pay his rent to a third party after an initial determination had been made that the premises were in disrepair and when it became due under the rental agreement. This would appear to protect both the landlord and tenant interests.

For this reason, the discrimination against the tenant in the imposition of the deposit and forfeiture provisions under Sections 5503 and 5504 are in violation of the Equal Protection Clause of the Fourteenth Amendment.

*Severability*

The question presents itself whether the Court can uphold the remainder of the Act as constitutional, while severing from the Act the unconstitutional provisions of 53 Tenn.Code Ann. §§ 5501(b), 5503, and 5504. The Court, in this regard, is aided by the rule that if the legislative intent indicates that the Act would have been enacted even in the absence of the invalid portions then the Court is under a duty to separate the defective portion and uphold the remainder. Lynch v. United States, 292 U.S. 571, 586, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). In this case the legislature's intent was expressly set forth at 53 Tenn.Code Ann. § 5507 in the form of a savings clause. However, "[i]t is well-settled that a severability clause is merely an aid to construction, not an inexorable command." Tupman Thurlow Co. v. Moss, 252 F.Supp. 641 (M.D.Tenn. 1965) (citing Railroad Retirement Bd. v. Alton R. Co., 295 U.S. 330, 361, 362, 55 S.Ct. 758, 79 L.Ed. 1468 (1935); Dorchy v. State of Kansas, 264 U.S. 286, 290, 44 S.Ct. 323, 68 L.Ed. 686 (1924)). Thus, the savings clause cannot soften or defeat what otherwise appears to be the legislature's paramount intent. The Court cannot say that absent the unconstitutional provisions of Sections 5501(b), 5503 and 5504 that the Tennessee legislature would have enacted the present Act. For this reason the Act in its entirety must be declared void.