**Dennis MOORE, Plaintiff-Appellant,**

v.

**Eugene FOWINKLE, Commissioner, Tennessee Department of Public Health, et al., Defendants-Appellees.**

**No. 74–1907.**

United States Court of Appeals, Sixth Circuit.

March 12, 1975.

Jerrold L. Becker, David M. Kirstein, Legal Clinic, University of Tennessee, Knoxville, Tenn., for plaintiff-appellant.

Milton P. Rice, Atty. Gen. of Tenn., C. Haynes Cooney, Deputy Atty. Gen., Nashville, Tenn., Charles A. Maner, Jr., County Law Director, Knoxville, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, EN-GEL, Circuit Judge, and DUNCAN, District Judge.*

PHILLIPS, Chief Judge.

This appeal involves the constitutionality of a Tennessee statute dealing with the problem of rented premises unfit for human habitation. Chapter 139, Public Acts of 1973, codified at T.C.A. §§ 53–5501 to 53–5507.

The statute applies only to tenants who pay rent of $50 per week or less. As a prerequisite to obtaining relief, the tenant must have paid to the landlord all sums due and owing and must deposit with the county court clerk one month's rent. This security deposit is returned to the tenant if the premises are found to be unfit for habitation, but, if the complaint proves to be unfounded, the deposit is forfeited to the State for the

---

* Honorable Robert M. Duncan, Judge, United States District Court for the Southern District of Ohio, sitting by designation.

use of the county agency to which the complaint was directed.

After a complaint has been filed, a building inspector inspects the premises and the landlord is given 30 days to correct any deficiency found. If the landlord does not effect adequate repairs within this period, the tenant makes rental payments to the county court clerk for the next six months. If the premises have not been made fit for habitation within six months, all the rent is forfeited by the landlord to the State for the use of the county agency.

Dennis Moore rented a house for $95 per month. Believing that this house did not meet minimum health standards, he attempted to file a complaint with the building inspector of Knox County, Tennessee, and sought to obtain an inspection of the premises. He contended that because of his poverty he was unable to pay the security deposit of one month's rent as required by the statute. Inspection was refused without advance payment of the deposit as required by the statute.

Thereupon Moore filed this action in the District Court seeking a declaratory judgment that the statutory requirement for a security deposit is unconstitutional.

In an opinion published at 381 F.Supp. 587 (E.D.Tenn.1974), the District Court held the requirement for a security deposit to be invalid under Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1972), emphasizing that the effect of the statute is to require a complaining tenant to pay a double penalty for the privilege of making a complaint, *i.e.*, by paying a month's rent to the county court clerk and also a month's rent to the landlord for the same month.

■ There has been no appeal from that part of the decision of the District Court holding unconstitutional the requirement that a tenant make a security deposit. The judgment of the District Court on this issue is final and the question is not before this court on appeal.

■ The District Court further pointed out that the Act does not apply to all tenants, but is restricted to those who pay $50 a week or less for rent, and concluded: "To permit certain tenants to invoke the benefits and protection of this statute and to deny the same to others, in the absence of any reasonable basis, offends the equal protection clause of the Fourteenth Amendment." 381 F.Supp. at 591. We hold that there is a reasonable basis for limiting the application of the Act to tenants paying not more than $50 a week for rent. This is a matter of legislative classification. *See* Village of Belle Terre v. Boraas, 416 U.S. 1, 8 & n. 5, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); Jefferson v. Hackney, 406 U.S. 535, 545–47, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); Dandridge v. Williams, 397 U.S. 471, 484–87, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Williamson v. Lee Optical Co., 348 U.S. 483, 488–89, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

■ Having found invalid both the security deposit requirement and the $50 rental classification, the District Court held the Act unconstitutional in its entirety. Since we have reversed on the classification issue, we believe that the doctrine of elision now can be applied, striking that part of the statute requiring the security deposit which was found to be invalid, and preserving the validity of the remainder of the legislation.

The statute as codified is made an appendix to this opinion, with the elided portions of T.C.A. §§ 53–5503 and 53–5506 set forth in the brackets.

The doctrine of elision is well established in Tennessee. Mayor and Aldermen v. Wilson, 212 Tenn. 55, 60, 367 S.W.2d 772 (1963); Scott v. Nashville Bridge Co., 143 Tenn. 86, 122–23, 223 S.W. 844 (1919).

Although the doctrine is not favored, Tennessee courts have applied it consistently to avoid defeat of apparent legislative intent in the enactment of a statute, where the statute upon its face discloses a fact situation that brings it within the rule. Davidson County v. Elrod, 191 Tenn. 109, 111, 232 S.W.2d 1 (1950).

■ When a statute contains one or more unconstitutional provisions, the obnoxious provisions will be eliminated and the statute sustained as to the rest, unless the invalid provisions are deemed so essential, and are so interwoven with others, that it cannot reasonably be presumed that the legislature intended the statute to operate otherwise than as a whole. Lindsay v. Allen, 112 Tenn. 637, 647, 82 S.W. 171 (1904).

■ Where an invalid provision is incidental and subordinate and can be stricken without impairing the efficacy of the act, this will be done. Kyle v. Marcom, 181 Tenn. 57, 71, 178 S.W.2d 618 (1944); Williams v. Mabry, 176 Tenn. 343, 347, 141 S.W.2d 481 (1940).

The statute contains the following severability clause:

SECTION 7. If any provision of this act or the application thereof to any person or circumstance is held invalid, such invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to that end the provisions of this act are declared to be severable.

T.C.A. § 1–310 is as follows:

1–310. *Severability of Code.*—It is hereby declared that the sections, clauses, sentences and parts of the Tennessee Code are severable, are not matters of mutual essential inducement, and any of them shall be exscinded if the Code would otherwise be unconstitutional or ineffective. If any one or more sections, clauses, sentences or parts shall for any reason be questioned in any court, and shall be adjudged unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provision or provisions so held unconstitutional or invalid, and the inapplicability or invalidity of any section, clause, sentence or part in any one or more instances shall not be taken to affect or prejudice in any way its applicability or validity in any other instance [C.Supp.1950, § 27.3; modified.]

■ A severability clause must be taken into account in determining the legislative purpose unless observance thereof would frustrate the dominant legislative intent. Donathan v. McMinn County, 187 Tenn. 220, 237–38, 213 S.W.2d 173 (1948); Gates v. Long, 172 Tenn. 471, 480–81, 113 S.W.2d 388 (1938) (opinion by Chief Justice Grafton Green).

■ If possible, it is the duty of the courts to give effect to a severability clause and to make an elision, so as not to invalidate an entire act. Carr v. State ex rel. Armour, 196 Tenn. 256, 260, 265 S.W.2d 556 (1954).

The action of the Tennessee Legislature that culminated in the enactment of Chapter 139, Public Acts of 1973, originated with House Joint Resolution No. 50 adopted May 28, 1971. This resolution is as follows:

### HOUSE JOINT RESOLUTION NO. 50

A RESOLUTION directing the Legislative Council Committee to study the factors contributing to the expansion and perpetuation of slum conditions in the four major cities of Tennessee.

WHEREAS, the suburbs of our cities have burgeoned while the central cities decay so that people are living in a sea of social and economic decay while affluence is around them; and

WHEREAS, The impact of various housing programs have not stopped the growth of slums nor removed the environmental disorder of slums from the cities; and

WHEREAS, The news media have given coverage to the urban ills and have drawn attention to the mounting problems of the financial woes of cities, their decayed and dangerous streets, and their slums and the need to stimulate the regeneration of cities; and

WHEREAS, The cost of allowing our central cities to deteriorate physically to a point where government subsidies are required to renew large

portions of them is an economic drain; and

WHEREAS, The elimination of contributing factors, whether governmental or private, to the development and growth of slums might spur the rehabilitation and lessen the need for urban renewal or other government actions; and

WHEREAS, It should be possible to live the "good life" in either the central city or suburbia; and

WHEREAS, New programs at state and local levels may be needed for the rehabilitation and preservation of our cities; now, therefore,

BE IT RESOLVED BY THE HOUSE OF REPRESENTATIVES OF THE EIGHTY-SEVENTH GENERAL ASSEMBLY OF THE STATE OF TENNESSEE, THE SENATE CONCURRING, That the Legislative Council Committee be directed to study the factors contributing to the expansion and perpetuation of slums and urban decay of the cities of Chattanooga, Knoxville, Memphis, and Nashville and the problems of rehabilitation and renovation of these urban areas and to recommend legislation that would lead to new programs at state and local levels to eliminate these factors and problems; and to report its findings and recommendations to the Eighty-Eighth General Assembly.

BE IT FURTHER RESOLVED, That the University of Tennessee, Tennessee State University, and Memphis State University be directed to cooperate in this study.

Research is one of the functions of the Legislative Council Committee. T.C.A. § 3–404. The appellate record in the present case does not contain a copy of the report of the study conducted by the Council pursuant to House Joint Resolution No. 50. The 1973 statute by its terms reflects a legislative intent to provide a procedure for the correction of violations of minimum health standards that render low-cost rental property unfit for human habitation.

We hold that the requirement for a security deposit of one month's rent, which the District Court found to be invalid, is incidental and subordinate to the other provisions of the statute. The remainder of the statute can be given effect without the requirement for a security deposit. In the above-quoted severability clause the legislature has declared that if any provision of the Act be held invalid, such invalidity shall not affect other provisions of the Act that can be given effect. If possible, it is our obligation to construe the statute so as to accomplish the legislative intent.

Accordingly, we reverse the decision of the District Court holding the entire Act unconstitutional. We hold that the statute as set forth in the appendix of this opinion, with the bracketed language omitted, is a valid and constitutional Act. We elide from T.C.A. § 53–5503 the following:

> and shall have deposited with the county clerk of the county in which the complaint is to be filed a sum equal to one (1) month's rental which sum shall be: (1) returned to the tenant upon final determination that the rented premises fails to meet the said standards or (2) forfeited by the tenant to the state for the use of the county agency to whom the complaint was directed upon a final determination that the rented premises meets the said standards.

We elide from T.C.A. § 53–5506 the words "deposit and" and "not including said deposit."

Reversed. Costs are taxed against the Commissioner of the Tennessee Department of Public Health in his official capacity.

Appendix to follow

APPENDIX

## CHAPTER 55—RENTED PREMISES UNFIT
## FOR HABITATION

SECTION.
53–5501. Definitions.
53–5502. Minimum health standards — Establishment — Distribution.
53–5503. Complaint by tenant — Prerequisites — Contents.
53–5504. Inspection — Notice of unfitness — Repairs — Deposit of rent — Certificate of non-compliance — Forfeiture of rent.

SECTION.
53–5505. Dispossession of tenant — Vacating during repairs — Premises not repairable.
53–5506. Duties of county clerk — Fees.
53–5507. Appeal of certificate of non-compliance — Judicial review.

**53–5501. Definitions.**—As used in this chapter unless the context otherwise requires:

(a) "Landlord" means lessor, one under whom another holds premises as a tenant or lessee.

(b) "Tenant" means one who occupies as a residence the premises of another in subordination to that other person's title and with his assent express or implied and whose rental payments do not exceed fifty dollars ($50.00) per week or the monetary equivalent thereof for any period of payment other than weekly. [Acts 1973, ch. 139, § 1.]

**53–5502. Minimum health standards—Establishment—Distribution.**—The department of public health of the state shall establish and distribute to each county and public health department of the state minimum health standards in the rental of any premises; these standards shall establish living and building conditions of a dwelling which render it unfit for human habitation. [Acts 1973, ch. 139, § 2.]

**53–5503. Complaint by tenant—Prerequisites—Contents.**—Any tenant may file a complaint with the building inspector of the city or county in which the rented premises is located or with the county public health department in which said tenant's rented premises is located where the premises are, in the opinion of the tenant who occupies same, in violation of said minimum health standards and consequently unfit for human habitation. The complaint shall be in writing and a copy shall be forwarded by certified mail to the tenant's landlord, who is the owner of the premises. As a condition precedent to the filing of a complaint as herein provided, the tenant shall have paid all rental sums due and owing. [and shall have deposited with the county court clerk of the county in which the complaint is to be filed a sum equal to one (1) month's rental which sum shall be: (1) returned to the tenant upon final determination that the rented premises fails to meet the said standards or (2) forfeited by the tenant to the state for the use of the county agency to whom the complaint was directed upon a

final determination that the rented premises meets the said standards.]
[Acts 1973, ch. 139, § 2.]

**53-5504. Inspection—Notice of unfitness—Repairs—Deposit of rent—Certificate of noncompliance—Forfeiture of rent.**—The building inspector or the county public health department to whom the complaint is directed shall, within fourteen (14) days of the filing of a complaint, make an inspection of the rented premises. If it is found that said unit is unfit for human habitation, as defined, the building inspector or county public health department shall notify the landlord of the premises of the violation found, in writing, by certified mail, and a copy shall be forwarded to the tenant. The notice, in addition to setting out the condition found, shall give the landlord of the premises thirty (30) days in which to correct the condition. If at the expiration of the thirty (30) day period, as determined by an inspection of the premises by the building inspector or by the county public health department, which inspection shall be made within seven (7) days of the expiration of said period, the landlord of the premises has not corrected the condition, the tenant shall pay to the county clerk of the county wherein the premises is located the rental payments which may become due from that date. If the landlord of the premises has not corrected the condition at the expiration of six (6) months from the date of the first notice, as determined by an inspection of the premises by the building inspector or county public health department, which inspection shall be made within seven (7) days of the expiration of said period, the rental payments so made by the tenant to the county court clerk shall, upon a certificate of noncompliance being filed with the county court clerk by the building inspector or the county public health department, which certificate shall be filed within fourteen (14) days of the expiration of said period, a copy of which shall be forwarded by certified mail to the landlord, be forfeited by the landlord of the premises to the state for the use of the agency to whom the complaint was directed and the county court clerk shall, at the expiration of a thirty (30) day period from the date the certificate of noncompliance is filed where no appeal has been filed by the landlord as provided herein, pay to the state for the use of the county agency to whom the complaint was directed, less all fees as hereinafter provided, the rental payments so held. If an appeal is filed by the landlord, the sums so held by the county court clerk shall remain on deposit in the special account pending the final determination of the appeal. If the landlord of the premises shall have corrected the condition, as determined by an inspection of the premises by the building inspector or the county public health department, the county court clerk shall, upon receiving a certificate of compliance from the building inspector or the county public health department, which certificate shall be filed within fourteen (14) days of the expiration of said period, return the rental payments so held to the landlord of the premises. [Acts 1973, ch. 139, § 3.]

**53-5505. Dispossession of tenant—Vacating during repairs—Premises not repairable.**—No tenant shall be dispossessed of the rented premises or otherwise penalized by the landlord of the premises for prosecuting any complaint under or pursuant to this chapter, or for payment to the county court clerk of rental payments where the rented premises is in violation of the standard, as defined herein. However, in the event it is necessary to temporarily vacate the premises to carry out repairs, the landlord may get temporary possession from the tenant, and the tenant's rent will be abated during this period and resume upon his moving back into the premises. In the event the conditions are such that to repair the building is not feasible, the landlord shall notify the tenant and the agency to which the complaint was directed that he has elected not to repair the structure and shall give the tenant thirty (30) days' notice to vacate the premises. Thereafter the premises shall not be rented or used as a human habitation unless and until said condition of violation is corrected. [Acts 1973, ch. 139, § 4.]

**53-5506. Duties of county clerk—Fees.**—The county court clerk of each county of the state is authorized and directed to accept the [deposit and] rental payment sums as provided herein and shall deposit such sums in a special account and shall account for such sums, as provided by law to account for such other sums in his possession. The county court clerk, for his services, shall receive the sum of five per cent (5%) from all such rental payment sums, [not including said deposit,] which are forfeited to the state for the use of the county agency to whom the complaint was directed. [Acts 1973, ch. 139, § 5.]

**53-5507. Appeal of certificate of noncompliance—Judicial review.**—The landlord of the premises shall have the right to appeal the findings of the building inspector or of the county public health department to the county board of health of the county in which the premises is located. Where the county has no county board of health, the appeal shall be made to the county judge of the county in which the premises is located. The appeal shall be made within thirty (30) days from the date of the filing of the certificate of noncompliance. The landlord shall have the right, after the determination by the county board of health or the county judge, of appeal to the circuit court of the county in which the premises is located. An appeal shall be heard de novo in the circuit court. [Acts 1973, ch. 139, § 6.]

**Effective Date.** Acts 1973, ch. 139, § 8. May 1, 1973.