Samuel EUBANKS, M.D., et al.,
Plaintiffs–Appellants,

v.

Wallace WILKINSON, et al.,
Defendants–Appellees.

No. 88–6085.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 30, 1990.

Decided July 3, 1991.

David A. Friedman, Bonnie M. Brown, American Civ. Liberties Union of Kentucky, Louisville, Ky., Lynn M. Paltrow (argued), Janet Benshoof, Rachael N. Pine, Dawn Johnson, American Civ. Liberties Union Foundation, New York City, for plaintiffs-appellants.

Ryan M. Halloran, General Counsel, William K. Moore, Charlotte Levy, Staff Attys., Stanley A. Stratford, Asst. General Counsel, Sandra E. Downs, Cabinet for Human Resources, Office of the Counsel, Frankfort, Ky., Frederic J. Cowan, Atty. Gen., Mary James Young, Asst. Atty. Gen. (argued), Office of the Atty. Gen. of Kentucky, Frankfort, Ky., Ernest Jasmin, Louisville, Ky., Ray Larson, Commonwealth Attorney's Office, Lexington, Ky., N. Scott Lilly, Asst. County Atty., Louisville, Ky., Florence Huffman, Lexington, Ky., for defendants-appellees.

Julie J. Giordano, Amy E. Dougherty, The Rutherford Institute of Kentucky, Bluegrass Chapter, Inc., Jerry L. Horn, Bussey, Horn & Hayden, Lexington, Ky., Thomas M. Troth (argued), Swinford & Sims, Cynthiana, Ky., for intervenor-appellee.

Bonnie Thie, Seattle, Wash., Theodore H. Amshoff, Jr., Guy Anthony Bayes, Amshoff, Amshoff & Searcy, Louisville, Ky., Ann–Louise Lohr, Chicago, Ill., for amicus curiae.

Before MERRITT, Chief Judge, WELLFORD *, Senior Circuit Judge, and DEMASCIO, Senior District Judge.**

MERRITT, Chief Judge.

This case raises two issues concerning the severance of unconstitutional portions of a parental consent abortion statute. The plaintiffs, doctors and others, appeal the ruling of the District Court in their challenge to Kentucky's statute requiring physicians to obtain the consent of both parents of a minor prior to performing an abortion on the minor. The District Court found significant portions of the statute unconstitutional but preserved the statute in part by modifying one provision and severing others. The defendants, State officials, have not appealed the District Court's finding of unconstitutionality, and the District Court's ruling in this respect is the law of the case which we must accept.

---

* The Honorable Harry W. Wellford assumed senior status on January 21, 1991.

** The Honorable Robert E. DeMascio, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

There are two major issues: (1) Having found that a state statute unduly burdens a woman's right to an abortion, may a court supply new limiting language, modifying the statute so as to avoid unconstitutionality, and then enjoin all operations of the statute except as the newly drafted limiting language will allow; and (2) having severed the portion of a statute which carries out the statute's dominant purpose, may a court leave intact a provision secondary to the dominant purpose but capable of independent operation rather than striking the entire statute.

We follow the general rule that a federal court may not supply new limiting language for a state statute to create constitutionality. Thus the District Court erred in drafting a new limiting condition rather than severing the provision found unconstitutional. In light of our holding that the provision found unconstitutional must be severed and not redrafted, we remand to the District Court for a hearing on the issue whether the statute should be declared invalid in its entirety since such substantive parts of it have been stricken. Therefore, for the reasons set forth below, we affirm the District Court's opinion in part, reverse in part, and remand.

I.

In the District Court, the plaintiffs challenged Kentucky's statute requiring physicians who perform abortions for minors to secure the signed and notarized informed written consent of the minor and both parents if available, and setting forth criminal and civil penalties not excluding exemplary damages against persons who fail to secure the prescribed consent. The statute provides for a judicial bypass as an alternative for the minor who wishes to seek an abortion without the consent of her parents. Ky.Rev.Stat.Ann. §§ 311.732, 311.733, and 311.990(12) (Baldwin 1986).

The relevant part of Kentucky's statute requiring parental consent for minors who seek abortions reads as follows:

(2) No person shall perform an abortion upon a minor unless:

(a) The attending physician or his agent secured the informed written consent signed and notarized of the minor and both parents, if available, or legal guardian;

(b) If both parents are not available, the attending physician or his agent has secured such written consent from the minor and the available parent or guardian; . . . .

(3) Every minor shall have the right to petition any circuit or district court of the Commonwealth for an order granting the right to self-consent to an abortion pursuant to the following procedures: [procedures set forth]

Ky.Rev.Stat.Ann. § 311.732(2)(a), (b) & (3) (emphasis added).

The statute includes a specific severability provision which authorizes the severance of any "provisions, words, phrases, clauses, or application of KRS 311.732" which may be held invalid, thus allowing the remaining portions of the statute to be given effect. *See* Ky.Rev.Stat.Ann. § 311.733. Finally, the statute provides the following penalty:

(12) Any person who intentionally performs an abortion with knowledge that, or with reckless disregard as to whether the person upon whom the abortion is to be performed is an unemancipated minor, and who intentionally or knowingly, fails to conform to any requirement of KRS 311.732 is guilty of a Class A misdemeanor.

Ky.Rev.Stat.Ann. § 311.990(12).

The District Court found that the words "both parents if available" were unconstitutionally vague, holding that the words could not be rendered constitutional through interpretation. It further declared the requirement for two-parent consent an unconstitutional burden on the minor woman's right to privacy.[1] To remedy that

---

1. The District Court rejected several limiting constructions of the phrase "if available," including a suggestion from the Kentucky Attorney General that it might mean " 'if both parents

are living with their daughter.' " Jt.App. at 18. The District Court said:

We express no opinion as to whether any of the proposed tests of "availability" could pass

burden and to preserve the statute rather than striking the unconstitutional portion, the District Court supplied new limiting language: the state may require the informed written consent of both parents only "[i]n the case of a minor living at home with both parents." Jt.App. at 42. The Court enjoined application of the statute in all cases not covered by the newly framed limitation and severed the criminal penalty for physicians who failed to secure the consent required. The District Court also declared the requirement for notarized signatures unconstitutionally burdensome and severed that requirement.

The State did not appeal, but rather the plaintiffs appealed the District Court's remedial actions, claiming that the Court should have struck the entire statute on finding significant portions unconstitutional rather than modifying and saving a key provision by supplying new limiting language.

Taking into account the District Court's ruling on the substantive question of constitutionality which was not appealed and is now final, the question before this Court is whether the District Court erred in substituting new language, and then enjoining operation of the provision except as its modification would allow, and in severing other provisions in order to preserve the operation of the statute. For the reasons set forth below we reverse the District Court's addition of new limiting language to the state statute in order to preserve it from the prior declaration of unconstitu-

tionality but affirm the District Court's severance of the notarization requirement. Accepting as we must the District Court's ruling that a requirement for two-parent consent creates an unconstitutional burden on the minor's right to privacy, we sever the parental consent portion of the statute. We remand for a hearing on the issue whether the provision requiring the written informed consent of the minor should be left intact or whether the entire statute should be declared invalid. This remedy leaves the Kentucky legislature free to write its own limitations for a parental consent statute within the constraints of the minor's constitutional right of privacy. Our severance of the two-parent consent requirement makes it unnecessary to reach the question of severing the criminal penalties for physicians or other objections to the statute raised by the plaintiffs. We remand for the issuance of an injunction, consistent with this opinion, concerning the two-parent consent provision and for a hearing and decision on the severance issue left undecided by this opinion.

## II.

Because the Commonwealth of Kentucky did not appeal the District Court's opinion, the question of the statute's constitutionality is not before us. *See Moore v. Fowinkle,* 512 F.2d 629, 631 (6th Cir.1975). We consider whether the District Court erred in the remedy it designed to address the unconstitutionality it found in the statute.

---

constitutional muster if incorporated in the statute. It is sufficient that no such test appears in the legislation. We realize that the conduct of the physician must be "knowing" but that provision does not save the statute from unconstitutionality because of vagueness, particularly where the minor's constitutional right will be affected.
*Id.*
The District Court appeared to blend its concern for vagueness as unfair to physicians with a concern about the vagueness in its effect on the minor's constitutional right.

In declaring that the two-parent consent requirement created an unconstitutional burden on the minor woman's right to privacy, the District Court balanced the interests of the State and the interests of the minor. According to the District Court, a one-parent consent require-

ment served the state's interest in involving parents in the decision of the minor and protecting minors "from their own vulnerability and immaturity." Jt.App. at 15. Because two-parent consent would add to the minor's burden without better serving the state's interest in protecting the minor, the District Court viewed the two-parent consent as furthering other interests such as protection of "some sort of parental right." *Id.* The District Court seemed to view protection of this parental right as similar to the parental veto declared invalid in *Planned Parenthood of Missouri v. Danforth,* 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976). The District Court thus declared that "the burden imposed by the two-parent consent requirement cannot be justified constitutionally except where the young woman reports that she lives at home with both parents." Jt.App. at 16.

When a federal court declares part of a state statute unconstitutional, it acts under the authority of the Supremacy Clause. In order to decide the remedial issue before us—whether a federal court should supply limiting language to preserve the constitutionality of a state statute, thus making policy choices usually made by the state legislature—we must take into account a number of factors. One of those factors is the policy of the Commonwealth of Kentucky respecting judicial revision of Kentucky statutes. It would seem anomalous in severing Kentucky statutes for a federal court to act more intrusively than would the highest court of the Commonwealth when considering whether to modify a state statute after a finding of unconstitutionality.

The Kentucky Supreme Court in *Musselman v. Commonwealth*, 705 S.W.2d 476 (Ky.1986), in an opinion by Judge Leibson, considered a remedial statutory problem similar to the problem before this Court and rejected the proposition that a court may narrow a statute by introducing new limiting words. In reviewing a Kentucky Court of Appeals ruling that an ordinance could be construed as constitutional, the Kentucky Supreme Court said:

> The problem is that the limiting language utilized to avoid unconstitutionality is supplied by the Court of Appeals and not by the statute. The statute itself ... does not state in so many words, or in any words, that it is restricted to "fighting words" or words "which have a direct tendency to cause acts of violence by the person to whom ... addressed."

705 S.W.2d at 477.

The Court noted that the source of the limiting language was a prior United States Supreme Court case, not anything derived from the statute. The restrictive language employed by the Court of Appeals was taken from *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). *Id.*

The Kentucky Court distinguished between the task of construing ambiguity and that of adding words to restrict otherwise broad language:

While we agree that if the words of a statute are ambiguous the court can and should so construe it as to render it constitutional, clearly the judiciary lacks power to *add* new phrases to a statute to provide a new meaning necessary to render the statute constitutional. The statute as written punishes coarse or abusive language, per se. We cannot add to it a phrase restricting it to language likely to cause violence. As stated in *Hatchett v. City of Glasgow, Ky.*, 340 S.W.2d 248, 251 (1960): "[W]here a statute on its face is intelligible, the courts are not at liberty to supply words or insert something or make additions which amount, as sometimes stated, to providing for a *casus omissus*, or cure an omission, however just or desirable it might be to supply an omitted provision."

*Id.* (Emphasis in original).

The Court therefore simply held the statute invalid and declined to revise its language.

■ Federal courts generally have set out similar guidelines. Courts construe statutes to avoid constitutional difficulty when "fairly possible." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296–97, 76 L.Ed. 598 (1932). When a statute is "'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *Virginia v. American Booksellers Assn.*, 484 U.S. 383, 397, 108 S.Ct. 636, 645, 98 L.Ed.2d 782 (1988) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)).

■ Nevertheless, the general federal rule is that courts do not rewrite statutes to create constitutionality. *See American Booksellers Assn.*, 484 U.S. at 397, 108 S.Ct. at 645 (stating that "we will not rewrite a state law to conform it to constitutional requirements"); *Blount v. Rizzi*, 400 U.S. 410, 419, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971) (declaring that "it is for Congress, not this Court, to rewrite the statute"). A case often cited to support the principle that courts do not make the policy choices involved in changing statutes to make them constitutional is *Freedman v. Maryland*,

380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). In *Freedman,* the Court reviewed a Maryland statute that required movies to be submitted to a board of censors prior to being shown. The statute included no duty on the part of the government to institute judicial review if a film were barred nor any requirements for prompt review after judicial proceedings were begun. The Court outlined criteria necessary to make state movie censorship law constitutional, but then noted that "[h]ow or whether Maryland is to incorporate the required procedural safeguards in the statutory scheme is, of course, for the State to decide." *Freedman,* 380 U.S. at 60, 85 S.Ct. at 739–40. *See also American Tobacco Co. v. Patterson,* 456 U.S. 63, 75, 102 S.Ct. 1534, 1540–41, 71 L.Ed.2d 748 (1982) (Court noted its own prior decisions that had "refused to narrow § 703(b) by reading into it limitations not contained in the statutory language"); *accord Wilson v. N.L.R.B.,* 920 F.2d 1282, 1289 (6th Cir.1990) (rejecting argument that it described as "a request for this court to perform a legislative function" and declaring that "courts cannot judicially redraft statutory language").

A narrow exception to the rule that a court will not redraft a statute to create constitutionality seems to have been developed in cases involving underinclusive benefits statutes which are challenged on equal protection grounds. The Court in *Califano v. Westcott,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979), faced directly the question of modifying the terms of a statute's application.

> "When a statute is defective because of underinclusion, . . . there exist two remedial alternatives: a court may either declare [the statute] a nullity and order its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion."

*Westcott,* 443 U.S. at 89, 99 S.Ct. at 2663 (quoting *Welsh v. United States,* 398 U.S. 333, 361, 90 S.Ct. 1792, 1807–08, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring in result)).

The *Westcott* Court decided that it appropriately could remedy this underinclusive federal law, which granted benefits to children of unemployed men but not to children of unemployed women, by extending benefits to children of unemployed women as well. The Secretary asked the Court to limit the expansion of the class by creating a new category of beneficiaries, thus introducing a new term: " 'principle wage earner.' " *Id.* 443 U.S. at 91, 99 S.Ct. at 2664. The Court declined to make this major change in the structure of the act, preferring instead to expand the class to be benefitted to include children of unemployed women but otherwise making no change in the statute. Rather than nullifying the program, the Court expanded it because the Court saw expansion as more consistent with Congressional intent than nullification. *Id.* at 91–93, 99 S.Ct. at 2664–65.

The *Westcott* Court dealt with a federal statute. The Supreme Court has also expanded the class to be covered by some state statutes by eliminating unconstitutional conditions or limitations on coverage. *See Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (Court held invalid one year residence requirement as condition for county-paid medical care on basis of equal protection); *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973) (holding that once state has created a right on behalf of children, it cannot withhold benefit from illegitimate child); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972) (holding that state cannot deny unacknowledged illegitimate children recovery under workmen's compensation statute while allowing recovery to legitimate children); *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (state may not deny welfare benefits to otherwise eligible recipients because the residents have lived in the state for less than a year on basis that such a classification denies residents equal protection); *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, *reh'g denied,* 393 U.S. 898, 89 S.Ct. 65, 21 L.Ed.2d 185 (1968) (holding that once state recognizes wrongful death recovery for

child, state cannot hold that term "child" excludes illegitimate child). These cases generally involved no language change. They are instead an invalidation of unconstitutional conditions on statutory coverage.

Eliminating unconstitutional conditions is not the same as adding new language, and the Court has sounded a note of caution even about eliminating unconstitutional conditions when a federal court reviews *state* statutes. *See, e.g., Welsh v. United States,* 398 U.S. 333, 363 n. 15, 90 S.Ct. 1792, 1808 n. 15, 26 L.Ed.2d 308 (1970) (noting the Court's more limited discretion "to extend a policy for the States even as a constitutional remedy"). In some cases involving state law, brought originally in state court, the Supreme Court has identified the equal protection problem but remanded to the state to decide the question whether the class of protection should be expanded to answer the demands of equal protection or whether the entire benefit should be invalidated. It has seen the question of revision of the state statute as a question of state policy. *See Orr v. Orr,* 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) (Court declared Alabama law allowing alimony to wives but not to husbands unconstitutional on equal protection grounds but remanded to state for remedy, deferring to state the policy question whether state would extend benefit); *Stanton v. Stanton,* 421 U.S. 7, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975) (declaring Utah law fixing majority for women as eighteen and for men as twenty-one to be unconstitutional when applied to child support context so as to require parental support for son until age twenty-one but for daughter only until age eighteen but remanding to state the substantive decision of expansion or contraction).

In another context, in what seems a very narrow exception to the general rule, the Supreme Court supplied time limits within which a forfeiture proceeding must be instituted for material seized pursuant to a federal statute allowing customs officials to seize obscene materials. *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822, *reh'g*

*denied,* 403 U.S. 924, 91 S.Ct. 2221, 29 L.Ed.2d 702 (1971). The time limits that would allow the statute to meet the *Freedman* procedural guidelines, *see Freedman, supra,* 380 U.S. at 58–60, 85 S.Ct. at 738–40, were absent from the statute. The Court inserted the limits, based on legislative history which indicated that the forfeiture proceeding should be held immediately following the seizure of materials. *Thirty–Seven Photographs,* 402 U.S. at 370–73, 91 S.Ct. at 1405–07. The Court distinguished this case from *Freedman* on the basis that *Freedman* dealt with a state statute, and a federal court lacked jurisdiction authoritatively to construe state legislation. *Id.* at 369, 91 S.Ct. at 1404–05. The Court noted that in the case before it, it had only to supply the detail of time limits, the policy question of immediacy for the forfeiture proceeding having been decided by Congress as indicated in the legislative history. *Id.* at 370–73, 91 S.Ct. at 1405–07.

Even in cases in which the Supreme Court has seemed to act legislatively, it has done so in narrowly circumscribed ways and has maintained its general reluctance for federal courts to make policy decisions in relation to state statutes. Thus, the rule that courts are not to redraft statutes to preserve constitutionality remains generally applicable.

The Supreme Court stated this general rule for federal courts dealing with federal statutes more than one hundred years ago in *United States v. Reese,* 92 U.S. 214, 23 L.Ed. 563 (1875), when addressing whether an unconstitutionally overbroad penal statute could be limited by judicial construction. "The proposed effect is not to be attained by striking out or disregarding words that are in the section, but by inserting those that are not now there.... The question, then, to be determined, is, whether we can introduce words of limitation into a penal statute...." *Reese,* 92 U.S. at 221. The Court reiterated a court's power to "annul [the legislature's] encroachments upon the reserved power of the States and the people," *id.,* but rejected the argument that it should add a limiting construction to an overbroad statute. "To limit this stat-

ute in the manner now asked for would be to make a new law, not to enforce an old one. This is no part of our duty." *Id.* While stated in relation to penal statutes, the rule has not been limited to penal statutes. *See* 2 N. Singer, Sutherland Statutory Construction § 44.16 (4th ed. 1986).

The Court reiterated this view in *Hill v. Wallace*, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822 (1922). The Court acknowledged that the severability provision in the statute under review "furnish[ed] assurance to courts that they [could] properly sustain separate sections or provisions of a partly invalid act without hesitation," *Hill*, 259 U.S. at 71, 42 S.Ct. at 459, but asserted that such a severability provision did not allow "the court to dissect an unconstitutional measure and reframe a valid one out of it by inserting limitations it does not contain. This is legislative work beyond the power and function of the court." *Id.* at 70, 42 S.Ct. at 459.

Courts generally do not add words of limitation to statutes because they are aware of the dangers of intruding on the legislative function. The *Reese* Court noted that if courts were left the task of limiting general statutes to make them constitutional, "[t]his would, to some extent, substitute the judicial for the legislative department of the government." 92 U.S. at 221. Courts do not want to be in the business of "creat[ing] a program quite different from the one the legislature actually adopted." *Sloan v. Lemon*, 413 U.S. 825, 834, 93 S.Ct. 2982, 2987–88, 37 L.Ed.2d 939, *reh'g denied*, 414 U.S. 881, 94 S.Ct. 30, 38 L.Ed.2d 128 (1973). The Court in *Sloan v. Lemon* declined to construe into legislation a distinction between sectarian and nonsectarian schools where the "statute nowhere sets up this suggested dichotomy." *Id. See also Trade–Mark Cases*, 100 U.S. 82, 99, 25 L.Ed. 550 (1879) (Court declined to give trademark legislation a narrowing construction, saying that "[i]f we should, in the case before us, undertake to make by judicial construction a law which Congress did not make, it is quite probable we should do what, if the matter were now before that body, it would be unwilling to do").

When a federal court deals not with a federal statute but with a state statute, its task is further complicated. A federal court must always be aware of the federalism concerns that arise whenever it deals with state statutes. "The principles of federalism forbid a federal appellate court to arrogate the power to rewrite a municipal ordinance." *Hill v. City of Houston*, 789 F.2d 1103, 1112 (5th Cir.1986) *aff'd*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Federal courts lack authority and power to give a limiting, narrowing construction to a state statute. *See Hynes v. Mayor of Oradell*, 425 U.S. 610, 622, 96 S.Ct. 1755, 1761–62, 48 L.Ed.2d 243 (1976) (Court declined to give a limiting construction to Oradell ordinance, saying that "we are without power to remedy the defects by giving the ordinance constitutionally precise content"); *Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974) (declining, in the absence of a "narrowing state court interpretation" to supply a limiting construction, saying that "[w]e are without authority to cure that defect"). *See also Virginia v. American Booksellers Assn.*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

The Court has said further that in the absence of a state-court interpretation, a federal court, may "predicate[ ]" its "constitutional determination ... on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless." *Moore v. Sims*, 442 U.S. 415, 428, 99 S.Ct. 2371, 2379–80, 60 L.Ed.2d 994 (1979)·(citations omitted). *See also Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770, 108 S.Ct. 2138, 2150–51, 100 L.Ed.2d 771 (1988) (Court declined to presume that Mayor would "adhere to standards absent from the statute's face," and declared that "the limits the city claims are implicit in its law [must] be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice" and asserting that "[t]his court will not

write nonbinding limits into a silent state statute").

■ This Circuit has adhered to the principle that a federal court "has very limited powers in construing state statutes or municipal ordinances." *Record Revolution No. 6, Inc. v. City of Parma*, 638 F.2d 916, 926 (6th Cir.1980), *vacated on other grounds*, 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982), *on remand*, 709 F.2d 534 (6th Cir.1983). In *Record Revolution* this Circuit noted that the District Court had found it necessary, in order to find an ordinance constitutional, to "add[ ] to, delete[ ] from and define[ ] the statutory language." 638 F.2d at 926. This Court rejected that method of dealing with a state statute, noting instead that "a federal court must take the state statute or municipal ordinance as written and cannot find the statute or ordinance constitutional on the basis of a limiting construction supplied by it rather than a state court." *Id. See also Michigan State Chamber of Commerce v. Austin*, 642 F.Supp. 1078, 1079 (E.D.Mich.1986) (District Court asserting that it could not "authoritatively narrow Michigan's statute" and that "[j]udicial construction cannot save Michigan's statute because the statute needs substantial revision").

Other circuits have ruled similarly. The Third Circuit ruled that canons of interpretation guiding courts to preserve the constitutionality of a statute when reasonable to do so did not "give a court license to rewrite a statutory scheme." *Consumer Party v. Davis*, 778 F.2d 140,147 (3d Cir. 1985) (citations omitted). The Fifth Circuit likewise held that "[f]ederal courts do not sit as a *super* state legislature, [and] may not impose [their] own narrowing construction onto the ordinance." *Hill v. City of Houston*, 789 F.2d 1103, 1112 (5th Cir.1986) (citations omitted). *See also Universal Amusement Co. Inc. v. Vance*, 587 F.2d 159, 172 (5th Cir.1978), *aff'd*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413, *reh'g denied*, 446 U.S. 947, 100 S.Ct. 2177, 64 L.Ed.2d 804 (1980) (asserting that federal court "cannot judicially rewrite the Texas statutes and rules to incorporate the *Freed-*

*man* safeguards"). This principle was also applied by the District Court in what became a leading case on a minor woman's right to choose an abortion. *See Baird v. Bellotti*, 450 F.Supp. 997 (D.Mass.1978), *aff'd*, 443 U.S. 622; 99 S.Ct. 3035, 61 L.Ed.2d 797, *reh'd denied*, 444 U.S. 887, 100 S.Ct. 185, 62 L.Ed.2d 121 (1979). The District Court rejected the notion that it should "read[ ] into the statute affirmative provisions made out of nothing but a generally announced purpose to pass constitutional muster." *Id.* at 1005. The District Court asserted that it was not possible to rewrite a statute on the basis that "[r]egardless of whether a statute says too much, or too little, ... the legislature intended it to be constitutional." *Id.* at 1006.

### III.

The Commonwealth of Kentucky argues that the District Court simply construed "if available" to mean "where the young woman ... lives at home with both parents." Such an argument seems mistaken in light of the District Court's own refusal to construe "if available" in that manner in the vagueness portion of its opinion. Rather than construing anything in the statute or its legislative history, the District Court appears to have chosen language used by the United States Supreme Court. The Court used similar phrasing in *Bellotti v. Baird*, 443 U.S. 622, 649, 99 S.Ct. 3035, 3051, 61 L.Ed.2d 797 (1979), in dicta suggesting circumstances where two parent consent might be constitutional.

The District Court, in choosing the limiting condition in order to save that provision of the statute, made the same mistake as the Kentucky Court of Appeals made in the decision under review in *Musselman v. Commonwealth*, 705 S.W.2d 476 (Ky.1986) which also chose language from a United States Supreme Court case and suggested that the statute could be applied as though limited by the United States Supreme Court's phrasing. The Kentucky Supreme Court rejected that remedy, saying that the words were supplied by the court, not by the legislature.

In this case we must weigh both the need to keep legislative and judicial power separate and the need to respect state judicial policy regarding revision of state statutes. In applying the doctrine of judicial review, our jurisprudence in this area of interpretation stresses both separation of powers and federalism concerns. The District Court had nothing before it from the statute or its history that suggested that the Kentucky legislature would have chosen this limiting language. In fact, the Kentucky legislature had available to it the language suggested by the *Bellotti* Court in 1979 and did not choose that language. The District Court had no information about why the Kentucky legislature chose apparently more restrictive language than the *Bellotti* language.

■ Whatever the reasoning of the Kentucky legislature, a federal court, on reviewing a state statute, does not assume the task of making such choices for the state legislature. This is particularly true where, as here, a court can protect the interests of both parties by severing the unconstitutional provision rather than reframing it. The State may pursue its own policy choices in fashioning new legislation, and the minor remains free of undue burden while the legislature redesigns its statute.

A further complicating factor in this case is that United States Supreme Court abortion doctrine is unsettled respecting statutes authorizing parental involvement. In *Hodgson v. Minnesota,* —— U.S. ——, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990), the majority ruled that a blanket requirement for two-parent notice, even in the face of a decision by one parent not to notify the other, does not further any state interest. *Hodgson,* 110 S.Ct. at 2945. Such a ruling may run counter to the *Bellotti* dicta. Furthermore, while the Court approved the Minnesota two-parent notice statute on the basis of Justice O'Connor's view that the unconstitutional notice statute could be saved by a judicial bypass provision, this ruling may not apply to a consent statute. The Court generally views a consent requirement as more burdensome than a no-

tice requirement. *See Ohio v. Akron Center for Reproductive Health,* —— U.S. ——, 110 S.Ct. 2972, 2979, 111 L.Ed.2d 405 (1990). Thus, a remedy approved for a notice statute might not be approved for a consent statute. The Supreme Court has not yet considered a two-parent consent statute. Given this uncertainty, it is all the more problematic for a federal court to impose a new statutory limiting condition in an effort to try to preserve an invalid statute. The new language could turn out to be unconstitutional after the Supreme Court settles the law. Discretion would seem the better part of valor in this area of the law.

This view that federal courts should be wary in adding new language to a statute in exercising its severance power in a discrete case or controversy between litigants is reinforced by the traditional view of the legal consequences of the judicial "invalidation" of a statute. Strictly speaking, a federal court disposes of questions of constitutionality in litigation by a judgment which binds only the parties in a case. A ruling that a statute is unconstitutional and therefore unenforceable is made applicable to others in the future by force of the doctrine of precedent. The court therefore says "what the law is," *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803), for the parties and for future disputes, but the court does not remove the statute from the books. It is not the province of the court to repeal or amend an invalid state statute, and the citizens of a state should not be required to look to federal court decisions to determine the language of the statute or amendments to it. They look to court decisions for statutory interpretation and validity. The result of a court decision may often be similar to a statutory amendment, but the underlying theory is quite different and does not include repeal, or amendment of the text of the statute by adding new language. *See generally,* L. Tribe, American Constitutional Law § 3–3 (2d ed. 1988).

■ We conclude that while a federal court may enjoin the operation of some provisions of a state statute and leave oth-

ers to operate, it cannot itself draft a new limiting condition, thus reframing the statute. Thus the District Court erred in supplying a limiting condition under which Kentucky's two-parent statute could operate constitutionally. We hold that the two-parent consent requirement must be severed and not redrafted.[2]

## IV.

The last question requiring decision in this case is whether, having severed the provision requiring two-parent consent, a court should leave intact the provision requiring written informed consent of the minor. The plaintiffs argued that the District Court should have invalidated the entire statute after its finding of unconstitutionality. Neither party, however, focused on the question whether the requirement for the minor's consent should fall if the parental consent provision was severed.

■ It is well-settled that requiring the minor's consent is not only constitutionally permissible but constitutionally necessary. *See Roe v. Wade*, 410 U.S. 113, 152–53, 93 S.Ct. 705, 726–27, 35 L.Ed.2d 147 *reh'g denied*, 410 U.S. 959 (1973) (holding limited, *Webster v. Reproductive Health Services*, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989). The State has a strong interest in requiring the minor's consent independent of requiring parental consent: protecting the minor's right to privacy includes protecting her right to choose not to have an abortion. While the provision at issue makes absolutely clear that the minor herself must consent before an abortion could be performed, Kentucky already has a pro-

vision which requires that "[n]o abortion shall be performed except with the voluntary and informed consent of the pregnant woman." See Ky.Rev.Stat.Ann. § 311.726. The provision at issue before us appears to reiterate and parallel this section rather than adding any new requirement.

The test for whether a court should sever one portion, leaving the balance of the statute has been stated variously. Generally a court may sever an invalid provision of a statute, leaving the rest to operate, if the "invalid portion can be shown not to have been the inducement for the passage of the act," and if there is no evidence that "the valid and invalid parts of the act" were "conditions, considerations, or compensations for each other." 2 N. Singer, Sutherland Statutory Construction § 44.06 (4th ed. 1986). Further, if the "[p]urpose of the statute is defeated by the invalidity of part of the act, the entire act is void," *id.* § 44.07, at 503, but if a statute "attempts to accomplish two or more objects and is void as to one, it may still be valid as to others." *Id.* at 504.

The United States Supreme Court has set out the following guidelines for a federal court considering severance of a statute. Generally, a court should " 'maintain [an] act in so far as it is valid.' " *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 1479, 94 L.Ed.2d 661 (1987) (citations omitted). The Court further stated that " '[u]nless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.' " *Id.* (citations omit-

---

**2.** The dissent states that we have "effectively announced that consent statutes will not survive constitutional analysis," thus negating Kentucky's dominant purpose with respect to the statute at issue. This analysis is not a correct one. We have recognized the Kentucky statutory severability scheme set out in § 311.733. We have held that such a provision cannot justify a District Court in adding a new limiting condition to a state statute. We have *not*, however, ruled that Kentucky, or any other state, may not constitutionally enact a statute providing for parental consent in the case of an unemancipated minor's desire to obtain an abortion. Indeed, even if we had intended to end

incorrectly attributed, this would have exceeded our prerogative and function in this case: to review the remedy designed by the District Court, following its declaration that portions of the statute were unconstitutional. Kentucky did not challenge the District Court's declarations as to unconstitutionality of the statute.

We have held, in summary, only that the District Court may not add new limiting language to the question dealing with two-parent consent "to preserve it from the [District Court's prior] declaration of unconstitutionality." The question of the statute's constitutionality is not before us, a difficult question not yet settled in the Supreme Court.

ted). Finally the Court suggested as the relevant inquiry "whether the statute will function in a *manner* consistent with the intent of Congress." *Id.* at 685, 107 S.Ct. at 1480 (emphasis in original).

The parties did not address and the District Court did not consider whether the requirement for the minor's consent should be left intact if the parental consent provision was to be severed. Certainly the statute will not operate in the manner in which it was intended to operate as a whole, once the parental consent requirement is severed. On the other hand, the requirement for the minor's own consent can be seen as quite independent of any of the severed portions and fully operative as law. The record does not address the question whether the Kentucky legislature would have enacted this consent provision, specific to minors, whether or not it enacted the provision requiring two-parent consent. We therefore remand to the District Court for a hearing to determine whether the provision requiring the minor's consent should be left intact or whether the entire statute should be declared invalid since the portions of the statute which appear to carry out the statute's dominant purpose have been stricken.

In addition, having declared the notarization provision invalid, a ruling not appealed, the District Court properly severed the statute's requirement for notarized signatures for the informed consent. Notarization is not the primary feature of the statute nor is that requirement so intertwined with the statute's other provisions as to be inseparable from the statute as a whole.

\* \* \* \* \* \*

Accordingly, the judgment of the District Court is affirmed in part and reversed in part; the case is remanded for the issuance of an injunction consistent with our holding that the two-parent consent requirement must be severed and not redrafted; further, the case is remanded for a hearing on the issue whether the provision requiring

the consent of the minor should be left intact or whether the entire statute should be declared invalid.

DeMASCIO, Senior District Judge, Dissenting:

The majority has severed the parental consent provision in Kentucky's statute concerning abortions performed upon unemancipated pregnant minors. In the process, the court has effectively announced that consent statutes will not survive constitutional analysis thereby eliminating the dominant purpose of Kentucky's consent statute.[1] Because I do not believe that parental consent statutes are unconstitutional on their face, or that the district court "draft[ed] a new limiting condition", or that the district court should have severed the two-parent consent provision, or unconstitutionally exercised its severance power in preserving the dominant purpose of Kentucky's consent statute, I cannot join the majority opinion.

In an order dated November 11, 1984, the district court declared Kentucky's Abortion Statute, H.B. 339, unconstitutional. In 1986, the parental consent provisions of the statute were amended in H.B. 589, as codified at KRS 311.732 and 311.990. The amended parental consent provision now provides, in relevant part, that an abortion shall not be performed upon a minor unless:

(1) The attending physician obtains the notarized informed written consent of the minor and both parents, if available; or

(2) if both parents are not available, the physician has the notarized written consent from the minor and the available parent or guardian; or....

On August 23, 1988, the district court held certain provisions of Kentucky's amended statute unconstitutional and severed other provisions. The court held unconstitutional the notarization provision because it created an unnecessary burden on

---

1. There are a number of other states that require parental consent. For example, the State of Michigan has recently adopted such a provision. The State of Delaware requires the con-

sent of parents residing in the same household. *See Hodgson v. Minnesota,* —— U.S. ——, 110 S.Ct. 2926, 2931 n. 5, 111 L.Ed.2d 344 (1990).

the abortion decision. The district court held further that the two-parent consent requirement was unconstitutionally burdensome "except where the young woman reports that she lives at home with both parents." This is so, the court held because the state's interest in "protect[ing] minors] from their own vulnerability and immaturity would be satisfied as soon as one parent was involved in the process." The court went on to hold further that "the section of the statute which makes it a crime for the . . . physician to perform the abortion unless he has received consent of both parents '*if available*' is clearly unconstitutional because of its vagueness." (Emphasis added.) Thus, the "if available" language was severed from the statute in both the civil and criminal context.[2] Although the district court severed the "if available" language the two-parent consent provision was not entirely severed. The two-parent consent provision still applies if the minor lives with both parents.

When a statute contains unconstitutional provisions, the invalid provisions may be severed unless the invalid provisions are essential and so interwoven with other provisions it must be presumed that the legislature did not intend severance. *Brown v. Alexander*, 718 F.2d 1417, 1428 (6th Cir. 1980). The contention that the notarization requirement, the mandatory two-parent consent provision, and the "if available" language are integral to the meaning of the statute is untenable. The balance of the statute functions independently of these provisions. Severance of these claus-

es does not render the remainder of the statute inoperable. *See Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684, 107 S.Ct. 1476, 1479–80, 94 L.Ed.2d 661 (1987). The relative inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the legislative intent, *Id.* at 685, 107 S.Ct. at 1480. The preamble of H.B. 589 indicates the legislative intent of providing parental consultation when a minor is considering an abortion. Despite severance of these provisions, the statute still furthers this legislative goal. The district court, therefore, upheld the requirement for consent of the parent or parents who live with the minor. In preserving the Kentucky Legislature's intent to promote parental consultation, the district court acted entirely consistent with the severability clause which provides:

> If any provision, word, phrase or clause of KRS 311.732 *or the application thereof to any person or circumstance* shall be held invalid, such invalidity shall not affect the provisions, words, phrases, clauses, or application of KRS 311.732 which can be given effect without the invalid provision, word, phrase, clause or application and to this end, the provisions, words, phrases, and clauses of KRS 311.732 are declared to be severable (emphasis added).

"It is the duty of the courts to give effect to a severability clause and to make an elision, so as not to invalidate an entire act." *Brown v. Alexander*, 718 F.2d at 1428, *citing Moore v. Fowinkle*, 512 F.2d 629 (6th Cir.1975).[3] The district judge

---

**2.** The court's judgment makes no mention of the "if available" language. The judgment reads in pertinent part:

. . . [E]nforcement of 1986 H.B. 589 is permanently enjoined as it requires informed written consent other than as follows:

(1) In all cases, the informed written consent of the minor seeking abortion.
(2) In the case of a minor living with both parents, the informed written consent of both parents.
(3) In the case of a minor living with only one parent or legal guardian, the informed written consent of that parent or legal guardian.

**3.** The appellants rely upon *Akron v. Akron Center for Productive Health*, 462 U.S. 416, 103 S.Ct.

2481, 76 L.Ed.2d 687 (1983), wherein the court rejected severance despite a severability clause. In that case, plaintiff argued that four sections of the statute were valid and severable. The Court, however, declined to sever because the sections required specific information for the attending physician to orally provide. *Id.* at 445 n. 37, 103 S.Ct. at 2501 n. 37. The court held invalid a related provision which stated that *only* the physician could provide this information. *Id.* at 449, 103 S.Ct. at 2502–03. Obviously, the provisions were intertwined and even the existence of a severance clause could not compel severance. In this case, the invalid provisions are not intertwined with the valid provisions. Severance would not result in a "radical dissection" in this case, so the severance clause can be enforced.

properly applied the severance clause as he was obliged to do. The severance measure in H.B. 589 provides that severance is proper if application of the statute is invalid *as applied* to any person or circumstance. The Supreme Court has held that "as a general rule, the requirement of obtaining both parents' consent" does not unconstitutionally burden a minor's right to seek an abortion, at least "when the parents are together and the pregnant minor is living at home." *Bellotti v. Baird*, 443 U.S. 622, 649, 99 S.Ct. 3035, 61 L.Ed.2d 797 *reh. denied*, 444 U.S. 887, 100 S.Ct. 185, 62 L.Ed.2d 121 (1979) (*Bellotti II*).

The district court properly held that the application of the two-parent consent provision was unconstitutional as it applied to the circumstance of a minor living with only one parent or legal guardian. Efforts to locate the noncustodial parent are overly burdensome. The statute itself provides that if both parents are not available, the physician need only have consent of the "available" parent or the minor's guardian. Hence, it was the Kentucky Legislature that supplied "a limiting condition" to the language "if available" not the district judge. Kentucky is aware that the consent of the custodial parent will suffice to provide consultation for a minor making an abortion decision. Hence, Kentucky approves of one-parent consent in the appropriate circumstances. But Kentucky chose to require consent of both parents when available. Kentucky may well believe that if the minor lives with both parents in a unified family home, it should not condone or require the minor to choose between them. That policy decision, agree with it or not, is surely for the State of Kentucky, not this court.

The majority is persuaded that the United States Supreme Court's approval of a two-parent consent statute is so tenuous, it would be more prudent to require Kentucky to re-write this statute and, I suppose, to omit parental consent. But, the majority's view omits any consideration of Kentucky's by-pass procedure. Kentucky has established rules that permit a pregnant minor to avoid parental involvement by following an uncomplicated by-pass pro-cedure. The Supreme Court has approved statutes governing a minor's right to an abortion so long as a judicial by-pass procedure is included. In *Hodgson v. Minnesota*, the judicial by-pass procedure made it possible for a Minnesota statute requiring two-parent notification to withstand constitutional attack. The Supreme Court acknowledged that in drafting its two-parent notification requirement, the Minnesota Legislature followed guidelines set forth by the Court:

> In providing for the by-pass, Minnesota has done nothing other than to attempt to fit its legislation into the framework that we have supplied in our previous cases. The simple fact is that our decision in *Bellotti II* stands for the proposition that a two-parent consent law is constitutional if it provides for a sufficient judicial by-pass alternative, and it requires us to sustain the statute before us here.

*Hodgson*, 110 S.Ct. at 2970 (Kennedy, J., concurring).

The Kentucky Legislature has provided a comparable judicial by-pass procedure. Kentucky not only provides for a guardian *ad litem* to assist the pregnant minor, but will appoint a lawyer as well. The by-pass rules require that minors' petitions to the court be kept confidential and may not be released to the public. The rule provides that confidentiality be enforced in the same manner as adoption records. There is no precedent that I am aware of that even gives hint that parental consent statutes with a comprehensive by-pass procedure will not pass constitutional muster. In fact, *Hodgson v. Minnesota* authorizes a state to impose regulations on a minor's access to an abortion, provided a judicial by-pass procedure is included. In *Hodgson*, the Court noted that the Minnesota statute is "the most intrusive in the nation" *Id.* at n. 5. Yet, the by-pass procedure saved the statute from constitutional attack.

Accordingly, I would find that the district court did not err in severing three unconstitutional provisions of Kentucky's Parental Consent Statute: the notarization

# 1132

requirement, the "if available" language, and the two-parent consent requirement as applied to a minor living with only one parent. These provisions were not intertwined with the remainder of the statute. When these three provisions are severed, the legislative intent of informed parental consent is still furthered by the remainder of the statute. I would affirm the district court's construction of Kentucky's Parental Consent Statute.