# Authority of Department of Housing and Urban Development to Initiate Enforcement Actions Under the Fair Housing Act Against Other Executive Branch Agencies

Because substantial separation of powers concerns would be raised by construing the Fair Housing Act to authorize the Department of Housing and Urban Development to initiate enforcement proceedings against other executive branch agencies, the Act cannot be so construed unless it contains an express statement that Congress intended HUD to have such authority Because the Act does not contain such an express statement, it does not grant HUD this authority

There is no basis for construing the Act so that the HUD investigative and administrative process under the Act may be deemed applicable, but the judicial enforcement procedures deemed inapplicable

May 17, 1994

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF AGRICULTURE

Pursuant to Executive Order No. 12146, 3 C.F.R. 409 (1979) you have asked us to resolve a dispute between the Department of Agriculture ("USDA") and the Department of Housing and Urban Development ("HUD") regarding "whether a Federal agency, such as USDA, may be a respondent under the enforcement process contained in sections 810-812 and [814] of [the Fair Housing Act, 42 U.S.C. §§ 3601-3619 ("the Act")], 42 U.S.C. §§ 3610-3612, 3614."[1]

Applying the standard the Supreme Court has used when a particular interpretation or application of an Act of Congress would raise separation of powers or federalism concerns, we believe that because substantial separation of powers concerns would be raised by construing the Act to authorize HUD to initiate enforcement proceedings against other executive branch agencies, we cannot so construe the Act unless it contains an express statement that Congress intended HUD to have such authority. Because the Act does not contain such an express statement, we conclude that it does not grant HUD this authority. In light of this conclusion, we do not decide whether such a grant of authority would be constitutional.

## I. Background

### A. Enforcement Procedures under the Fair Housing Act

The procedures for enforcement of the Act by the government are set forth in §§ 3610-3614 of title 42. Under § 3610, an aggrieved individual may file a dis-

---

[1] Letter for Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from James Michael Kelly, Associate General Counsel, USDA, at 1 (Jan. 6, 1994) ("Kelly Letter")

crimination complaint with HUD, or HUD may file such a complaint on its own initiative. HUD must then investigate the complaint and engage in conciliation with respect to it.[2] If HUD finds that reasonable cause exists to believe that a discriminatory housing practice has occurred, then HUD issues a charge on behalf of the complainant.

Under § 3612, the HUD charge results in either an administrative proceeding before a HUD administrative law judge ("ALJ") or, if elected by the complainant or any respondent, a civil action in federal district court. In the HUD administrative proceeding, the ALJ makes findings of fact and conclusions of law and may order relief for any discriminatory housing practice, including damages and civil penalties. Judicial review of the final HUD decision (including any review by the Secretary) is available in a federal court of appeals. If there is an election for a civil action instead of the administrative proceeding, the Act provides that the Secretary of HUD "shall authorize" and the Attorney General "shall commence and maintain" the civil action in federal district court on behalf of the complainant. The court may award the same relief that is available to private plaintiffs under section 3613, including injunctive relief and monetary damages.[3]

Finally, under § 3614(a), the Attorney General may bring a civil action in federal district court if she believes that "any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted [under the Act], or that any group of persons has been denied any of the rights granted by [the Act] and such denial raises an issue of general public importance." She may also bring a civil action with respect to a breach of a conciliation agreement referred to her by HUD.

## B. *USDA's Position*

USDA concedes that it is subject to discrimination prohibitions in the Act, Kelly Letter at 1 (citing 42 U.S.C. §§ 3603, 3608(d)), and that it is required to cooperate with HUD to further the purposes of the Act, *id.* at 2 (citing 42 U.S.C. § 3608(d), Exec. Order No. 12259). USDA takes the position, however, that it may not be made be made a respondent in enforcement proceedings brought by HUD under the Act.

---

[2] Section 3611 authorizes HUD to "issue subpoenas and order discovery in aid of investigations [under § 3610] and hearings [under § 3612]' "Such subpoenas and discovery may be ordered to the same extent and subject to the same limitations as would apply if the subpoenas or discovery were ordered or served in aid of a civil action in the United States district court for the district in which the investigation is taking place," § 3611(a), and criminal penalties are authorized for failure to comply with the subpoenas or orders, § 3611(c)

[3] Section 3613 governs enforcement of the Act by private parties, but it also provides that the Attorney General may intervene in a private action if she certifies that the case "is of general public importance" (§ 3613(e)). This Office's conclusion that the Act does not waive the sovereign immunity of federal agencies against imposition of monetary relief in private actions under § 3613 is set forth in a recent opinion to you. *See Authority of USDA to Award Monetary Relief for Discrimination*, 18 Op. O L C 52 (1994) ("Monetary Relief Memorandum").

USDA argues that "the Act does not provide a sufficiently clear and unequivocal waiver of the sovereign immunity of the United States to permit Federal agencies to be subjected to the enforcement procedures of the Act or to pay money damages as is allowed under the Act in either an administrative or a judicial forum." *Id.* at 2-3. It also argues that "allowing Federal agencies to be respondents under the Act offends the unitary nature of the Executive Branch by allowing one Executive agency to use a unilateral compulsory process against another," *id.* at 3, and that if HUD's invocation of these procedures against USDA resulted in an action in court, that "would create the untenable situation of having the Attorney General representing both the aggrieved person and USDA," *id.* at 5. Finally, USDA argues that such a suit "would fail to constitute a justiciable controversy under Article III of the Constitution" because "a person may not sue himself and there would appear to be serious constitutional difficulties with suits between two officers of the Executive Branch, each serving in his or her official capacity." *Id.*

## C. *HUD's Position*

HUD takes the position that "it may issue charges against Federal agencies, prosecute such claims through administrative proceedings, and have [the Department of Justice] prosecute election cases through judicial proceedings." Letter to Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, from Nelson A. Diaz, General Counsel, Department of Housing and Urban Development, at 6 (Jan. 26, 1994) ("Diaz Letter").

HUD argues that the term "respondent" is defined in the Act "as broadly as possibly so as to include any 'person or entity' without limitation," Diaz Letter at 1, and that both the Act and the Administrative Procedure Act (the "APA"), 5 U.S.C. §§ 701-706, provide a sufficient waiver of sovereign immunity for actions against federal agencies, *id.* at 1-3. HUD rejects USDA's "unitary Executive" argument and notes that "there exists precedent for allowing one Executive agency to sue another" and in any event an enforcement action under the Act "is not a controversy solely between two Federal agencies, but in addition, involves a controversy between the USDA and an individual complainant." *Id.* at 4-5. HUD's concluding argument is that

> [A]ggressive enforcement of civil rights statutes requires that [HUD] proceed wherever reasonable cause exists to believe that a violation has occurred. [HUD's] mandate from Congress is to enforce fair housing. Congress gave no indication either in the statute or legislative history that it intended that [HUD] make a special exception for Federal agency respondents that would deprive persons aggrieved by Governmental discrimination to the right to have their

claim prosecuted in a fair and impartial manner through the proce-
dures established in the Act.

*Id.* at 6.

## II. *Analysis*

The initial question presented is whether the Act's government enforcement
scheme may be construed to apply to executive branch agencies as a general mat-
ter. If we conclude that it may not be, then there is no need to resolve the Article II
and Article III constitutional issues raised by USDA, although it will be necessary
to determine whether the Act may be construed in such a way that only certain as-
pects of the scheme that may raise less of a constitutional problem may found ap-
plicable. We conclude that neither construction is permissible.[4]

### A. *Whether the Act's Enforcement Scheme Applies to Executive Branch Agencies*

Relying on the Act's definition of "respondent" as meaning "person" or
"entity," 42 U.S.C. § 3602(n), HUD argues that "Congress gave no indication ei-
ther in the statute or legislative history that it intended that [HUD] make a special
exception for Federal agency respondents . . . ." Diaz Letter at 6.

We do not believe that HUD is correct that Congress's silence in the context of
a broad definition of "respondent" justifies the conclusion that Congress intended
that executive branch agencies could be made respondents. In the course of con-
sidering whether the APA applies to the President, the Supreme Court made a fac-
tual statement that was similar to HUD's statement about the Fair Housing Act:
"The President is not explicitly excluded from the APA's purview, but he is not
explicitly included, either." *Franklin v. Massachusetts*, 505 U.S. 788, 800 (1992).
Because of the separation of powers concerns that would arise from a conclusion
that the APA applies to the President, the Court applied an "express statement"
standard and concluded that the President is not covered by the APA:

> Out of respect for the separation of powers and the unique constitu-
> tional position of the President, we find that textual silence is not
> enough to subject the President to the provisions of the APA. We
> would require an express statement by Congress before assuming it

---

[4] Because the dispute presented to us is between two executive branch agencies fully under the supervi-
sion of the President, there is no need to address whether the Act authorizes HUD to initiate enforcement
proceedings against an independent agency In addition, because of our conclusion that the Act's govern-
ment enforcement scheme does not apply to executive branch agencies, there is no need to address the sover-
eign immunity issue raised by USDA That issue would only arise if the judicial enforcement aspect of the
enforcement scheme were found applicable.

intended the President's performance of his statutory duties to be reviewed for abuse of discretion. As the APA does not expressly allow review of the President's actions, we must presume that his actions are not subject to its requirements.

*Id.* at 800-01.[5] The Supreme Court's use of an "express statement" standard in *Franklin* represented an example of the Court's traditional

reluctance to decide constitutional issues[,] [which] is especially great where, as here, they concern the relative powers of coordinate branches of government. Hence, [the Court is] loath to conclude that Congress intended to press ahead into dangerous constitutional thickets in the absence of firm evidence that it courted those perils.

*Public Citizen v. Department of Justice*, 491 U.S. 440, 466 (1989) (construing Federal Advisory Committee Act not to apply to Justice Department's consultations with American Bar Association regarding judicial candidates).[6]

We believe that an "express statement" requirement is necessary in the present context, for the same reasons one was applied in *Franklin* and the federalism cases cited above. Substantial separation of powers concerns would arise if the Fair Housing Act were construed to authorize HUD to initiate enforcement proceedings against other executive branch agencies. The concerns relate to both the President's authority under Article II of the Constitution to supervise and direct executive branch agencies and the Article III limitation that the jurisdiction of the federal courts extends only to actual cases and controversies. These concerns were succinctly summarized by President Reagan in his statement vetoing legislation containing a provision that would have authorized the Special Counsel of the Merit Systems Protection Board to litigate against executive branch agencies:

---

[5] *Cf* Monetary Relief Memorandum, 18 Op. O.L C at 54-55 (Supreme Court requires an "unequivocal expression" of Congressional intent to waive the sovereign immunity of the United States or to abrogate the Eleventh Amendment immunity of the States)

[6] The Supreme Court also applies an "express statement" or "clear statement" requirement when a particular construction of a statute would raise federalism concerns.

> [An] ordinary rule of statutory construction [is] that if Congress intends to alter the "usual constitutional balance between the States and the Federal Government," it must make its intention to do so "unmistakably clear in the language of the statute " *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985) . was an Eleventh Amendment case, but a similar approach is applied in other contexts Congress should make its intention "clear and manifest" if it intends to pre-empt the historic powers of the States, *Rice v Santa Fe Elevator Corp* , 331 U S. 218, 230 (1947), or if it intends to impose a condition on the grant of federal moneys, *Pennhurst State School and Hospital v Halderman*, 451 U.S 1, 16 (1981), *South Dakota v. Dole*, 483 U.S 203, 207 (1987)

*Will v Michigan Dept. of State Police*, 491 U.S. 58, 65 (1989) *See also Gregory v Ashcroft*, 501 U S. 452, 460-64 (1991) (applying "plain statement" standard and holding that Age Discrimination in Employment Act does not apply to state judges)

Implementation of this provision would place two Executive branch agencies before a Federal court to resolve a dispute between them. The litigation of intra-Executive branch disputes conflicts with the constitutional grant of the Executive power to the President, which includes the authority to supervise and resolve disputes between his subordinates. In addition, permitting the Executive branch to litigate against itself conflicts with constitutional limitations on the exercise of the judicial power of the United States to actual cases or controversies between parties with concretely adverse interests.

Memorandum of Disapproval on a Bill Concerning Whistleblower Protection, *Pub. Papers of Ronald Reagan* 1391, 1392 (Oct. 26, 1988).

As USDA indicated in its submission for this dispute, *see* Kelly Letter at 4-6, this Office has discussed in other contexts the separation of powers concerns that it raises. With respect to the Article III issue, this Office has consistently said that "lawsuits between two federal agencies are not generally justiciable." *Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. O.L.C. 131, 138 (1989) (citing *Proposed Tax Assessment Against the United States Postal Service*, 1 Op. O.L.C. 79 (1977)). We have reasoned that federal courts may adjudicate only actual cases and controversies, that a lawsuit involving the same person as both plaintiff and defendant does not constitute an actual controversy, and that this principle applies to suits between two agencies of the executive branch. *See* 13 Op. O.L.C. at 138-39.[7] With respect to Article II, we have indicated that construing a statute to authorize an executive branch agency to obtain judicial resolution of a dispute with another executive branch agency implicates "the President's authority under Article II of the Constitution to supervise his subordinates and resolve disputes among them." *INS Review of Final Order in Employer Sanctions Cases*, 13 Op. O.L.C. 370, 371 (1989) (citing *Myers v. United States*, 272 U.S. 52, 135 (1926)).

The foregoing separation of powers concerns are the essential backdrop for our analysis of whether the Fair Housing Act authorizes HUD to initiate enforcement proceedings against other executive branch agencies. Like the Supreme Court, we

---

[7] Our opinions have carefully distinguished the reported cases in which executive agencies were nominally both plaintiff and defendant In all of these cases, we have concluded, "one of the executive agencies is not the 'real part[y] in interest' but simply a stand-in for private interests." 13 Op O L C at 139 (citing 1 Op. O.L.C. at 81). HUD asserts that an action under the Act on behalf of a private complainant falls within the exception where one of the agencies is not the real party in interest Diaz Letter at 5. Although we readily concede that the private complainant is *one* of the parties in interest, the issue is not as simple as HUD suggests because the Attorney General, in bringing the action upon a referral from HUD, would also be representing government interests Thus, this Department and HUD might also properly be viewed as parties in interest and under this view could not be characterized as mere "stand-ins" for the complainant Indeed, HUD's submission makes this very point· "This is not a controversy *solely between two Federal agencies*, but *in addition*, involves a controversy between the USDA and an individual complainant " *Id* (emphasis added) *See generally, Ability of the Environmental Protection Agency to Sue Another Government Agency*, 9 Op. O L.C 99 (1985) (reviewing cases on "real party in interest" issue)

are "loath to conclude that Congress intended to press ahead into dangerous constitutional thickets in the absence of firm evidence that it courted those perils." *Public Citizen v. Department of Justice*, 491 U.S. at 466.

Nothing in the text of the Act indicates that Congress contemplated enforcement actions against executive branch agencies, which would involve (in the administrative proceeding) a contest between HUD and a respondent agency and (in any judicial proceeding) a contest between this Department and the respondent agency, which would be entitled to be represented by this Department. Indeed, we are inclined to agree with USDA that, in light of the Act's various express references to the United States and the federal government, *see, e.g.*, 42 U.S.C. §§ 3603(a), 3608(d), 3612(p), 3613(c)(2), 3614(d)(2), Congress's "failure to include the United States in the definition of respondent [42 U.S.C. § 3602(n)] — a term used repeatedly throughout the statutory description of the enforcement mechanism — evinces an intent that Federal agencies are not subject to the administrative procedure." Kelly Letter at 3. In any event, "no purpose to alter the President's usual superintendent role is evident from the text of the statute." *Franklin v. Massachusetts*, 505 U.S. at 800.[8]

Because initiating statutory enforcement proceedings that could result in judicial resolution of disputes between HUD and respondent executive branch agencies would necessarily "prevent[] [the President] from exercising his accustomed supervisory powers over his executive officers" (*id.*), and raise substantial justiciability questions if litigation ensued, we believe that the "express statement" standard used by the Supreme Court in *Franklin* and other cases applies here. We conclude in the absence of such an express statement in the Act that the Act does not authorize enforcement actions against executive branch agencies.

### B. *Whether Non-Judicial Aspects of the Act's Enforcement Scheme Apply to Executive Branch Agencies*

The foregoing discussion makes it clear that the most constitutionally problematic aspect of applying the Act's government enforcement scheme to executive branch agencies is that such an interpretation might result in judicial rather than Presidential resolution of inter-agency disputes. We therefore consider now whether the Act may be construed so that the HUD investigative and administrative process may be deemed applicable, but the judicial enforcement procedures deemed inapplicable.

The executive branch, which is constitutionally charged with enforcing the Act, may enjoy somewhat greater latitude to construe a statute to avoid constitutional

---

[8] Nor does the Act's legislative history suggest in any way an intent to authorize HUD to initiate enforcement proceedings against executive branch agencies. As with the statutory text, the legislative history simply speaks of "respondents" when it lays out the enforcement procedures. *See* H.R Rep No 100-711 (1988), *reprinted in* 1988 U S C C A N. 2173

difficulties than does a court. In this instance, however, while construing the Act to remove the courts from any role in HUD's enforcement against other executive branch agencies would reduce the constitutional problem, it would not eliminate it. Such a construction would remove the Article III "case or controversy" issue, but it would merely substitute one interference with the President's Article II authority to supervise and guide the executive branch for another: although no judicial role would threaten the President's ability to resolve an intra-executive branch dispute, the Act as construed would mandate a dispute resolution mechanism within the executive branch. This Department has long objected on separation of powers grounds to congressional micromanagement of executive branch decisionmaking. The manner and method of resolving disputes within the executive branch should be determined by the President, not by Congress.

Moreover, even if there were no constitutional difficulty presented by a construction of the Act that authorized HUD to bring enforcement proceedings against executive branch agencies so long as resolution of the dispute would remain within the executive branch, we do not believe that such a construction would be permissible in this instance because it would amount to a rewrite rather than a construction of the statute. *See generally Eubanks v. Wilkinson*, 937 F.2d 1118 (6th Cir. 1991) (discussing distinction between construing and rewriting a statute). To read out of the Act's government enforcement scheme the provisions authorizing judicial review of final HUD administrative action and authorizing complainants and respondents to elect judicial resolution and the Attorney General to bring enforcement actions would "create a program quite different from the one the legislature actually adopted," which is the mark of illegitimate rewriting. *Sloan v. Lemon*, 413 U.S. 825, 834 (1973). Nothing in the text or legislative history of the Act provides us any indication of a congressional intent that would serve as a basis for us to even consider such an exercise.

### III. *Conclusion*

Because of the absence of an express statement in the Fair Housing Act authorizing HUD to initiate enforcement proceedings against other executive branch agencies under the Act, we conclude that the Act does not grant such authority to HUD. We find no basis for construing the Act to eliminate judicial resolution of intra-executive branch disputes while retaining the statutory administrative mechanism.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*